The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David John WILSON, Defendant–Appellant.

No. 90CA2001.

Colorado Court of Appeals, Div. III.

May 21, 1992.

Rehearing Denied July 30, 1992.

Certiorari Denied Dec. 14, 1992.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Daniel & Thom, P.C., Gary S. Craw, Colorado Springs, for defendant-appellant.

Opinion by Judge MARQUEZ.

Defendant, David John Wilson, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault in the first degree, second degree burglary of a dwelling, sexual assault on a child, aggravated robbery, assault in the second degree, four counts of crimes of violence, and three habitual criminal counts. He also challenges the sentences imposed. We affirm.

On January 10, 1990, the victim's mother left for work at approximately 9:30 p.m., leaving the victim, a fourteen-year-old-girl, at home with her two brothers. Later, the victim awakened face down on the floor with an unknown male assailant sitting on her back. She felt a knife against the left side of her cheek, and the man told her to be quiet or he would kill them all. He then

put some type of cloth mask on the victim and told her she was not to see his face.

The man then put her on the bed, and, after going through the victim's bureau drawers, the assailant bound her to the bedposts and tied a sock around her head and mouth. The man then fondled and kissed her breasts, digitally penetrated her, and eventually had sexual intercourse with her. The victim was cut with the knife during the process. The man then departed, and the victim was able to untie herself.

Shortly thereafter, defendant, who had been dating the victim's mother, drove up, entered the house and announced, "It's David." He went up to the victim's room and she informed him that she had been raped. Defendant called the victim's mother and the police.

Subsequently, the victim's mother determined that a VCR, some jewelry, and a small amount of cash were missing. Also, the police discovered blood and hair at the scene that had apparently come from the assailant.

Early the next morning, the sheriff interviewed defendant about his report of the incident. The officers noticed at that time that there were bandaids on his fingers and that the tread pattern on his shoes was similar to footprints that had been found outside the victim's home. The police then obtained a Crim. P. 41.1 order to obtain blood and hair samples from defendant. The test results indicated that the hair and blood found in the victim's bedroom were consistent with the samples taken from defendant, and he was thereafter charged with the above crimes.

## I.

■ Defendant initially contends that the trial court erred in denying his request for discovery. He claims that the court unfairly shifted the burden to him to show that his request would lead to exculpatory information. We disagree.

Crim. P. 16(I)(a)(2) requires the prosecution to disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce the punishment therefor. Although these disclosures are mandatory, once a dispute about disclosure arises, the responsibility for determining what information must be disclosed shifts to the trial court. *People v. District Court,* 790 P.2d 332 (Colo.1990).

To qualify for disclosure, the exculpatory evidence must be material as measured by the following standard:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *People v. District Court,* 808 P.2d 831 (Colo.1991). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Here, in his motion for discovery, defendant requested: "Copies of reports and investigations of sexual assaults in Teller County and the western portion of El Paso County, Green Mtn. Falls, Cascade, Colorado from September 1, 1989 to [June 12, 1990]." After a hearing on this matter, the trial court concluded that, without some indication that there were similar pending cases, defendant had not made a sufficient showing that anything productive would result from a perusal of the requested files.

We find no error in the court's ruling since defendant failed to make some demonstration that disclosure of the requested material would have enabled him to alter significantly the quantum of proof in his favor. *See People v. Deninger,* 772 P.2d 674 (Colo.App.1989) (defendant failed to establish that evidence of victim's potential civil suit against him created reasonable probability that trial result would have been different); *People v. Marquiz,* 685

P.2d 242 (Colo.App.1984), *aff'd*, 726 P.2d 1105 (Colo.1986) (defendant made no showing that blood sample which people failed to provide to him would be exculpatory or material).

## II.

 Defendant further contends that the trial court erred in denying his motion to suppress statements obtained while he was in custody for "nontestimonial identification" procedures under Crim. P. 41.1 and that it applied Crim. P. 41.1 in an unconstitutional manner. Again, we disagree.

A statement of a suspect who is detained pursuant to an order to obtain nontestimonial evidence may be admissible under circumstances in which the suspect initiates a conversation with the police and, despite a lack of coercion or interrogation, voluntarily offers information. Factors relevant to whether the police exceeded the scope of the order include: the subjective intent of the police in executing the order; an objective assessment of the officer's actions in light of the facts and circumstances known to him; the identity of the party who initiated the conversation that led to the suspect's inculpatory statement or confession; and the physical environment of the suspect when such statements were made. *People v. Harris*, 762 P.2d 651 (Colo.1988).

Here, defendant made a statement at the hospital while blood and hair samples were being obtained. He told the police officer that he had something to tell the officer that "didn't look good" for him. When the officer asked what that was, defendant replied that he had masturbated on the side of the road on the night of the rape, so there might be a possibility of finding some of his pubic hairs on the victim's bed because he later sat there. Defendant's statement was subsequently admitted in evidence during his trial.

Defendant argues that since his statement was made in response to a direct question, it was the result of interrogation and was, therefore, inadmissible. However, the trial court concluded that it was not the officer's intent, either subjectively or objectively viewed, to interrogate defen-

dant until after the statement was made. The court further concluded that the statement was voluntarily made by defendant, not pursuant to interrogation, and that defendant initiated the conversation.

In this case, the officer's response was merely a continuation of a conversation that was clearly initiated by defendant. We also note that defendant's statement was a purported exculpatory explanation for the presence of his hair at the scene of the crime rather than an inculpatory statement. Thus, the trial court's findings are supported by the record and will not be overturned on appeal. *People v. Harris, supra.*

## III.

 We also reject defendant's contention that the trial court erred in not admitting the portions of defendant's statements to police in which he described how he was cut and explained why his blood was present in the victim's bedroom.

Defendant argues that his exculpatory explanation for the presence of his blood at the scene should have been allowed under the "rule of completeness" cited in *Graham v. People*, 134 Colo. 290, 302 P.2d 737 (1956). That rule holds that when an accused's statement in a criminal case is admissible in evidence, the entire statement, including favorable and unfavorable parts, should be admitted. To the extent the "rule of completeness" would allow admission of exculpatory statements, we conclude that it has no applicability here. *See Callis v. People*, 692 P.2d 1045 (Colo.1984).

Defendant also relies on CRE 106 for the admission of his statement. That rule provides as follows:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Here, according to pretrial testimony, defendant made statements on two occasions concerning the cuts on his fingers. The

first statement was made when the two sheriff's department officers interviewed defendant the morning after the rape. The second statement was made when one of the officers was transporting defendant from the hospital to the jail during the execution of the Crim. P. 41.1 Order.

The two officers testified as to their observations about the bandaids that were on defendant's fingers when he was first interviewed, but they did not testify about the contents of defendant's statement regarding his cuts. The trial court ultimately disallowed any questioning by defendant on that subject since the prosecution had not introduced any statements about the cuts. The prosecution offered no evidence at trial concerning the statement defendant made while traveling from the hospital to the jail. Nevertheless, defendant asserts that because the prosecution introduced statements about the masturbation incident and his footprints outside the victim's house, "fairness" required that he be allowed to elicit the omitted portions of his statements concerning the cuts.

There is nothing in CRE 106 which requires the introduction of portions of a statement that are neither explanatory of nor relevant to the admitted portions. *United States v. Marin*, 669 F.2d 73 (2d Cir.1982). Accordingly, we conclude that defendant's statements concerning the cuts on his fingers were properly excluded.

### IV.

■ Defendant next contends that, despite the absence of an objection from him, the trial court erred in allowing testimony that the victim had been receiving rape counseling, had suffered from post-traumatic stress syndrome, and would require another year of treatment. We do not agree.

When no contemporaneous objection is made to an asserted error, the plain error standard of review applies such that reversal is required only if the defect so undermined the fundamental fairness of the trial itself that it casts doubt on the reliability of the judgment of conviction. *Wilson v. People*, 743 P.2d 415 (Colo.1987).

As defendant asserts, identity was a central issue in dispute at the trial here. During cross-examination, defendant's attorney repeatedly addressed the victim's inability to identify defendant as her assailant. Again, during closing argument, he asserted that this inability on the part of the victim to make a specific identification created a reasonable doubt as to whether defendant was guilty of the charged offenses.

The social worker who had been counseling the victim testified that she was still experiencing denial and a lot of avoidance regarding the issue of being raped. The counselor further stated that this avoidance interfered with the victim's ability to recall significant events surrounding the traumatic event.

In view of defendant's challenges to the testimony of the victim, the counselor's testimony concerning her lack of recollection was directly relevant to the victim's inability to identify her attacker. Indeed, defense counsel commented during closing argument that the victim's memory of the events surrounding the rape may not have been accurate. In addition, the counselor's statements constituted a very small part of the prosecution's case and were not emphasized during its closing argument.

Thus, we conclude that the admission of this testimony did not substantially affect the fairness of defendant's trial. *See People v. Fasy*, 829 P.2d 1314 (Colo.1992).

### V.

■ Defendant finally contends that the trial court erred in sentencing him to four consecutive life terms. He argues that § 16–11–309(1)(a), C.R.S. (1991 Cum. Supp.) only requires consecutive sentencing upon proof of two or more separate incidents of using, possessing, or threatening to use, a deadly weapon and that each crime of violence conviction was based on the same evidence. We disagree.

Section 16–11–309(1)(a) provides that:

A person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such

crimes so that the sentences are served consecutively rather than concurrently.

If different evidence is required to establish guilt of each of the multiple offenses, they are "separate" crimes for purposes of this statute. *People v. Hahn*, 813 P.2d 782 (Colo.App.1991).

Here, defendant was convicted of four separate crimes of violence each of which was supported by different evidence. Evidence was presented that defendant sexually assaulted the victim at knife point. And, defendant threatened and caused bodily injury to the victim with the knife. The aggravated robbery was completed when defendant obtained the VCR, jewelry, and cash while he was armed with a knife. Also, defendant possessed the knife during the commission of the burglary.

Although the evidence supporting these offenses overlaps in some instances, the elements of each of the offenses are distinct and require different proof. We therefore conclude that the trial court did not err in sentencing defendant.

The judgment of conviction and the sentences imposed are affirmed.

STERNBERG, C.J., and REED, J., concur.