**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Frank MELILLO, Defendant–Appellant.**

**No. 96CA1515.**

Colorado Court of Appeals, Div. II.

Oct. 1, 1998.

Rehearing Denied Nov. 5, 1998.

Certiorari Granted May 17, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John D. Seidel, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, Frank Melillo, appeals from the judgment of conviction of sexually assaulting a child as a part of a pattern of sexual abuse. We reverse and remand for a new trial.

The information, as finally amended, contained three counts. The first count alleged that defendant had assaulted the victim, who was then more than 15 but less than 18 years of age, at a time when defendant was in a position of trust with respect to her. Count two asserted that he had assaulted the same victim at a time when she was less than 15 years of age and he was in a position of trust with respect to her. Finally, count three alleged that, between specified dates, ending when the victim was less than 15 years of age, defendant had assaulted her as a part of a pattern of sexual abuse.

The evidence presented by the prosecution was that defendant commenced sexual contacts of varying types when the victim was in the seventh grade and that those contacts continued until September 1993, some four months after she reached her 15th birthday. However, the first count, as it was submitted to the jury, relied upon a specific incident of sexual contact that allegedly occurred in the victim's bedroom. Likewise, the jurors were instructed that the second count was based upon a specific incident occurring in September 1992, before the victim was 15, after a concert that the defendant and the victim had attended.

In contrast, with respect to the third count, which alleged a sexual assault as a part of a pattern of sexual abuse, the jurors were not directed to a specific incident. Rather, they were instructed that the evidence had raised "issues concerning several alleged incidents of sexual assault," and they were told that, to convict defendant upon the offense charged, they were required to find beyond a reasonable doubt either of the following:

1. The defendant committed all of the incidents described by the evidence and included between June 1, 1992 and May 23, 1993.

2. The defendant committed two or more incidents of sexual contact with the victim described by the evidence between June 1, 1992 and May 23, 1993. The jurors must unanimously agree that the same two or more incidents have been proven beyond a reasonable doubt.

The jury returned a verdict of not guilty upon the charge in count one. The jurors were unable to agree with respect to the charge in count two, and consequently, that count was later dismissed by the prosecution. However, the jury returned a guilty verdict with respect to the charge in count three.

I.

■ Defendant first argues that, because the two charges that were based upon specific incidents were ultimately dismissed, he could not be convicted under the third count. With this contention, we disagree.

■ It is true, as defendant argues, that §18–3–405(1), C.R.S.1998, defines the offense and that §18–3–405(2), C.R.S.1998, merely describes circumstances which, if present, will elevate the crime defined in the former subsection from a class four to a class three felony. One of those circumstances is that the described offense is committed as part of a "pattern of sexual abuse." The latter subsection, therefore, is simply a sentence enhancer and cannot itself constitute the basis for a charge. *See People v. Longoria*, 862 P.2d 266 (Colo.1993); *People v. Graham*, 876 P.2d 68 (Colo.App.1994).

Hence, the parties here agree that, in those instances in which the prosecution al-

leges that the sexual offense was committed as a part of a pattern of sexual abuse, the "predicate" offense must be proven with the same degree of specificity as any other charged offense. *See People v. Hansen*, 920 P.2d 831 (Colo.App.1995); *People v. Graham, supra* (Criswell, J., concurring in part and dissenting in part).

■ However, if the predicate offense is based upon a series of incidents of similar character, proof of any one of which would support the substantive allegations of the underlying charge, the dual requirements of adequate notice to defendant of the charge and jury unanimity may, in appropriate circumstances, be fulfilled without requiring the People to rely upon a specific incident as the underlying offense. In those circumstances, if the court does not require the People to elect a single incident as the one that they are relying upon to support the charge, it may instruct the jurors that they must agree either that a single, particular incident occurred or that all of the incidents referred to in the evidence took place. *See Thomas v. People*, 803 P.2d 144 (Colo.1990); *People v. Hansen, supra.*

Here, the three counts of the information, on their faces, made clear reference to three *separate* offenses; count three did not allege that either of the offenses alleged in count one or count two was the "predicate" offense alleged in count three. Indeed, the specific allegations of count three as they were amended must be taken as referring to an offense other than the offense alleged in count one—the offense alleged in count one could have been committed *after* the victim reached 15 years of age, while a conviction of the charge in count three had to be based upon an incident occurring *before* she reached that age.

The evidence here was not limited to the two specific incidents that were the subjects of counts one and two. As noted, the evidence was that defendant had engaged in a series of sexual contacts with the victim over the course of about two years, any one of which could have served as the predicate offense charged in count three.

The defendant here did not request that the People elect a specific incident upon which to base the sexual assault charged in count three. Likewise, he did not seek the specification of one or more specific incidents as those that the People asserted constituted a part of a "pattern" of abuse, as also alleged in count three.

Further, defendant did not argue in the trial court and does not argue before us that the factual circumstances portrayed by this record were such that a *Thomas*-type instruction was not appropriate. *See People v. Graham, supra* (Criswell, J., concurring in part and dissenting in part). Therefore, we express no opinion upon this point.

Defendant does contend, however, that, given the nature of the offense required to be proven and of the required enhancing circumstances, §18-3-405(2) itself requires the prosecution to rely only upon a specific incident as the predicate offense underlying that enhancing statute. We disagree.

■ While it is true that the predicate offense under §18-3-405(2) must be alleged and proven with no lesser specificity than any other offense, there is no legislative intent or constitutional principle that would require greater specificity of either allegation or proof under this statute than is required for an allegation or proof of a sexual offense without the enhancing circumstances. *See People v. Hansen, supra.* Hence, if the facts at trial would otherwise authorize it, proof of both the predicate offense and the enhancing circumstances under §18-3-405(2), *i.e.*, proof of at least two incidents of sexual abuse within the pertinent ten-year period, may be made in accordance with the procedure adopted by the trial court here.

## II.

■ We do agree with defendant's assertion that the court erred in allowing a prosecution witness to describe a portion of a statement made to that witness by defendant, which could be considered inculpatory, while refusing to allow defendant to refer to another explanatory portion of that statement.

During the victim's testimony, she described an incident that occurred in defen-

dant's bedroom before she was 15. She said that, while both she and defendant lay on his bed, defendant began to unclothe her and himself and to fondle her legs and breasts. He was interrupted, however, when the victim's mother, defendant's wife, was heard arriving at the home. The victim testified that defendant jumped up, began to button his trousers, and told the victim to button her blouse. She also said that, when she left the bedroom shortly thereafter, she noted that defendant was attempting to divert her mother's attention by asking her to look at birds in the backyard.

The victim and her mother registered their initial complaints against defendant, which led to the charges in this case, at a time when the defendant and the victim's mother were engaged in marriage dissolution proceedings in which the custody of the victim's younger half-sister was a contested issue.

Shortly after these complaints were made, defendant was interviewed for more than an hour by a law enforcement investigator. In this interview, defendant denied that he had engaged in any improprieties with the victim. When asked why he thought the complaints were being made against him, he said that they were based on an incident occurring one day when the victim had lain on his bed with him. He said that he had begun to give the victim a backrub when he heard the garage door open. He jumped up, ran out of the room, and encountered his wife.

At trial, the investigator was allowed to testify that the defendant had told him that, upon encountering his wife at this point, "he thought it looked bad and he was afraid he would get in trouble." As a result, the investigator said defendant told him that he had acted nervous in front of his wife, that he had tried to distract her, and that he had actually, "started talking a lot of gibberish."

The investigator was prohibited from telling the jurors, however, that, immediately after making these statements, defendant had said that he had felt that he was going to get into trouble because, years before, the victim had "problems with the baby sitter" and that, as a consequence, his wife had made a "big deal in the house" about those problems ever since.

The "problems with the baby sitter," to which defendant's statement referred, consisted of an alleged sexual assault committed upon the victim by the baby sitter. In *in limine* proceedings prior to trial, the court had concluded that evidence respecting this prior assault was barred by the "rape shield" statute, §18–3–407, C.R.S.1998 (evidence of victim's prior sexual conduct is presumptively irrelevant). *See People v. Aldrich*, 849 P.2d 821 (Colo.App.1992) (statute bars evidence of prior sexual assault upon victim). And, it was its conclusion in this respect that led the court to refuse to admit that portion of defendant's statement making reference to the prior assault upon the victim.

Defendant does not directly contest the validity of the trial court's conclusion, generally, that the rape shield statute prohibited introduction of evidence respecting the prior assault upon the victim. He argues, however, that this statute cannot be used to allow a jury to consider only a portion of a defendant's statement and to exclude another portion of the same statement, if such exclusion results, as he claims is the case here, in giving a false impression of the substance of that portion of the statement introduced. We agree.

Both in the trial court and before us, defendant has argued that CRE 106 authorized the introduction of the explanatory portion of his statement that the trial court excluded. That rule provides that, if a part of "a writing or recorded statement" is introduced by one party, the adverse party may require the introduction of any other part of the statement "which ought in fairness to be considered contemporaneously with it."

The People argue that, because no *written* statement was introduced by them, CRE 106 is not applicable. While we agree that this rule, on its face, refers to writings and recorded statements, the principle upon which it is based is much broader; it is not limited solely to written statements.

◼ At least within the context of criminal proceedings, CRE 106 is a codification of the "completeness rule," which had been enunciated by the supreme court long prior to its

adoption of the rules of evidence. As described in *Graham v. People*, 134 Colo. 290, 310, 302 P.2d 737, 747 (1956), that rule provides that:

> [W]here a statement made by a defendant in a criminal case is admissible, either as an admission or declaration, it is admissible as an entire statement, including that which is favorable as well as unfavorable to the party making the same. . . .

■ This rule of completeness does not authorize the introduction of portions of a statement describing other improper conduct by a defendant, if evidence of that conduct is not otherwise admissible, *Callis v. People*, 692 P.2d 1045 (Colo.1984), nor does it authorize the introduction of portions of a statement that "are neither explanatory of nor relevant to the admitted portions." *People v. Wilson*, 841 P.2d 337, 341 (Colo.App.1992). Nevertheless, if the omitted portions of the statement provide a favorable explanation for those portions admitted, CRE 106 and the rule of completeness upon which it is based would require their receipt into evidence.

Further, this rule of completeness has never been limited solely to writings. *See Graham v. People, supra; People v. Wilson, supra.* And, here, the investigator "recorded" defendant's statement by taking rather extensive notes at the time of the interview. While these notes were not themselves offered as evidence, the investigator referred to them in providing his oral description of portions of that statement. We conclude that CRE 106 and the rule of completeness applied to that testimony.

■ There is, in addition, a related, but not identical, rule of evidence that is applicable here. That rule is that, if one party "opens the door" with respect to a particular subject, the adverse party is entitled to present evidence upon that same subject, even though such evidence might otherwise be inadmissible. This rule was recently described by the supreme court in *People v. Miller*, 890 P.2d 84, 98 (Colo.1995):

> This concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the

selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression.

Hence, if one party presents evidence that would present a false or misleading impression, the other party may explain or contradict that impression through evidence that might otherwise be inadmissible. *See People v. Rollins*, 892 P.2d 866 (Colo.1995) (defendant's referral to sexual misconduct by third parties with victim allowed prosecution to prove prior sexual acts of defendant with her that were not otherwise admissible); *Banek v. Thomas*, 733 P.2d 1171 (Colo.1986); *People v. Sams*, 685 P.2d 157 (Colo.1984); *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979).

If the prosecution "opens the door," therefore, the defendant is authorized to present evidence that would otherwise be barred by the rape shield statute. *See People v. Murphy*, 919 P.2d 191 (Colo.1996).

We conclude, therefore, that, whether the issue is considered in the context of CRE 106 and the completeness rule or under the "opening the door" concept, that portion of defendant's statement that he sought to admit was improperly excluded from the jury's consideration.

While it is true that the jury was informed by the investigator that defendant had said that he had not assaulted the victim, they were also informed that, with respect to the specific incident in question, he had considered that he was in trouble, that he was nervous, that he had tried to distract his wife's attention, and that he had ended up talking "gibberish." Yet, the jurors were not informed of the explanation that defendant gave for his feelings of nervousness. And, absent some explanation for those feelings and his later actions, a reasonable factfinder could well conclude that they betrayed a guilty conscience. Thus considered, that portion of the statement introduced by the prosecution supported the determination that the incident took place in the manner described by the victim, rather than in the manner that defendant had described.

We do not suggest, of course, that, absent the prosecution's reference to defendant's statement, evidence of the prior assault upon

the victim by a baby-sitter would be admissible; we do not pass upon that question. We simply conclude that, if the prosecution introduces a portion of the statement that defendant made to the investigator, the rape shield statute cannot prevent the introduction of other relevant portions of that statement that may serve to explain those portions referred to by the prosecution.

 We also conclude that the exclusion of this evidence was not mere harmless error. The principal issue presented for jury resolution was the victim's credibility. And, the record makes clear that the jury did not accept all of the victim's testimony. Indeed, the jury did not accept her testimony with respect to either of the two specific incidents described by her that formed the basis of the charges in count one and count two.

Further, it is clear that, in determining defendant's guilt of the charge in count three under the *Thomas* instruction, the jury did *not* decide that defendant had "committed *all* of the incidents described by the evidence." Rather, defendant's conviction of the charge contained in count three must have been based upon the jury's determination that two or more *other* incidents had occurred as the victim had described them. And, while the jury's general guilty verdict with respect to count three does not allow a determination as to which of the other incidents the jury relied upon, given the victim's specific testimony and defendant's description of his reactions with respect to the incident in defendant's bedroom, this incident could well have formed a part of the evidentiary foundation for the guilty verdict under count three. At the very least, we cannot conclude with any degree of confidence that it was not one of the incidents upon which the jurors relied for this purpose.

Finally, we cannot say that, had the jurors been told of defendant's explanation for his actions, they, nevertheless, would have found that the victim was, with respect to this incident, more credible than she was with respect to the specific incidents that were the subjects of counts one and two. In this sense at least, the evidence of defendant's guilt of the offense charged in count three was certainly not overwhelming. We conclude, therefore, that the trial court's evidentiary error was prejudicial.

The judgment is reversed, and the cause is remanded to the trial court for a new trial in accordance with the views set forth in this opinion.

Judge CASEBOLT and Judge VOGT concur.