The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent,

v.

Frank MELILLO, Respondent/Cross–Petitioner.

No. 98SC816.

Supreme Court of Colorado, En Banc.

May 29, 2001.

Rehearing Denied June 25, 2001.*

* Justice MARTINEZ and Justice BENDER would    grant.

Ken Salazar, Attorney General, John D. Seidel, Assistant Attorney General, Appellate Division, Denver, CO, Attorneys for Petitioner/Cross–Respondent.

David Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, CO, Attorneys for Respondent/Cross–Petitioner.

Justice RICE delivered the Opinion of the Court.

This case arises out of Defendant's conviction for sexual assault on a child as a part of a pattern of sexual abuse. We granted certiorari to review the court of appeals' decision in *People v. Melillo,* 976 P.2d 353 (Colo. App.1998). In *Melillo,* the court of appeals held that count three of the information sufficiently charged the crime of sexual assault on a child as a part of a pattern of sexual abuse. However, it reversed Defendant's conviction, holding that the trial court erred by excluding evidence proffered by Defendant. We now reverse the court of appeals' holding that the trial court erred in excluding evidence of the victim's prior sexual conduct, as this evidence was properly excluded under CRE 401, CRE 403 and Colorado's rape shield statute, § 18–3–407, 6 C.R.S. (2000). However, we affirm the court of appeals' holding that the information sufficiently charges the crime of sexual assault on a child as a part of a pattern of sexual abuse, and that the trial court properly instructed the jury on count three. Thus, we reverse in part and affirm in part, and reinstate the trial court's judgment of conviction.

## I. FACTS AND PROCEDURAL HISTORY

Defendant married the victim's mother and moved into their home in 1992. The victim testified that shortly thereafter Defendant began sexually abusing her and that this abuse became more recurrent and egregious over the course of the next year. According to the victim, Defendant was having nonconsensual sexual intercourse with her on a reg-

ular basis until the summer of 1993, when the victim became pregnant. Defendant told the victim to have an abortion, which she did. She later disclosed the sexual abuse to her mother.

In June 1995, Defendant was charged with two counts of sexual assault on a child by one in a position of trust, § 18–3–405.3, 6 C.R.S. (2000), and one count of sexual assault on a child, § 18–3–405(1), 6 C.R.S. (2000), as a part of a pattern of sexual abuse, § 18–3–405(2)(c), 8B C.R.S. (1986).[1] During the investigation, Defendant gave a statement to a law enforcement investigator referencing an incident during which the victim was sexually assaulted by her baby-sitter's son (the "daycare incident"). Prior to trial, Defendant filed a motion to present evidence of the victim's prior sexual contacts, including the daycare incident. A rape shield hearing was held and the trial court ruled that the daycare incident was not relevant to any material issue in the proceeding.

At trial, the prosecution called the investigator to testify about Defendant's statement. Defendant's attorney requested a bench conference, whereupon he asked that he be able to inquire about the portion of Defendant's statement referencing the daycare incident. The trial court again found that evidence of the daycare incident was inadmissible, but allowed the investigator to testify as to the other portion of the statement, which was inculpatory.

The jury acquitted Defendant on the first count and a mistrial was declared on the second count. The jury returned a verdict of guilty on the third count of sexual assault on a child as a part of a pattern of sexual abuse and the trial court entered judgment of conviction, sentencing Defendant to eighteen years in the Department of Corrections. Following the trial, Defendant filed a motion to vacate the verdict on count three and for entry of judgment of acquittal, asserting that the count did not charge a crime, but only a sentence enhancer. The trial court denied Defendant's motion.

The court of appeals affirmed the trial court's determination that count three of the information was sufficient to charge sexual assault on a child. *Melillo*, 976 P.2d at 355–56. The court, however, reversed Defendant's conviction and remanded for a new trial because it found that the trial court had erred by excluding the portion of his statement referencing the daycare incident. *Id.* It found that the evidence should have been admitted under the rule of completeness, or alternatively, the concept of "opening the door." *Id.* The People petitioned this court for a writ of certiorari to review the court of appeals' rulings on these evidentiary issues and Defendant cross-petitioned, contesting the sufficiency of count three. We granted certiorari on all three issues.[2]

## II. ANALYSIS

### A. EXCLUSION OF EVIDENCE OF VICTIM'S PRIOR SEXUAL CONDUCT

The first two issues presented on appeal concern whether the trial court erred in excluding evidence proffered by Defendant. Defendant posits that the court of appeals was correct in ruling that the evidence was admissible under the rule of completeness and the concept of "opening the door." We now hold that the court of appeals' reliance on these evidentiary principles was misplaced and that the trial court did not abuse its

---

1. At the time of Defendant's crime, the pattern of sexual abuse sentence enhancement provision was designated as subsection (2)(c). In 1995, it was redesignated, with minor amendments, as subsection (2)(d). *See* ch. 240, sec. 11, § 18–3–405, 1995 Colo. Sess. Laws 1249, 1253. Because the crime occurred before 1995, we will refer to this provision as section 18–3–405(2)(c).

2. Specifically, we granted certiorari on the following issues:
   1. Whether the prosecution may "open the door" to evidence which is presumptively irrelevant under the rape shield statute, when the defense, knowing that the evidence will be relevant to rebut a part of the prosecution's case, deliberately withdraws it from the trial court's consideration at the rape shield hearing.
   2. Whether the rule of completeness, as codified in CRE 106, supports admission of [Defendant's] unrecorded, untranscribed conversation with a police officer.
   3. Whether the evidence was insufficient to support the sexual assault—pattern of abuse.

discretion in excluding evidence of the victim's prior sexual abuse. We hold that CRE 401, CRE 403 and the rape shield statute, § 18–3–407, support exclusion of the evidence.

### 1. Standard of Review

We review a trial court's factual determination as to the relevance of evidence for abuse of discretion. *People v. Dunlap,* 975 P.2d 723, 741 (Colo.1999); *King v. People,* 785 P.2d 596, 603 (Colo.1990). Under this standard, the sound discretion of the trial court will not be overturned on appeal unless the court's evidentiary ruling was manifestly arbitrary, unreasonable, or unfair. *Dunlap,* 975 P.2d at 741; *King,* 785 P.2d at 603; *People v. Hampton,* 758 P.2d 1344, 1348 (Colo.1988) (holding that, "Our review of the trial court's ruling is necessarily circumscribed by the rule that a court's factual findings are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record.").

### 2. CRE 401, CRE 403 and the Rape Shield Statute

Our review of a trial court's determination of the admissibility of evidence requires an examination of such evidence under CRE 401 and CRE 403. CRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 403, however, authorizes a court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Trial courts have broad discretion to make evidentiary determinations under CRE 401 and CRE 403. *Dunlap,* 975 P.2d at 741; *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993).

Because the evidence excluded by the trial court in this case concerns a rape victim's prior sexual abuse, we also review the trial court's determination under the rape shield statute. § 18–3–407. In relevant part, the rape shield statute provides:

> (1) Evidence of specific instances of the victim's or witness's prior or subsequent sexual conduct ... *shall be presumed to be irrelevant* except:
>
> (a) Evidence of the victim's or witness's prior or subsequent sexual conduct with the actor;
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.

§ 18–3–407 (emphasis added). The statute then outlines a procedure through which a defendant may nonetheless seek to admit such evidence normally inadmissible:

> (2) In any criminal prosecution [for sexual assault on a child], if evidence, that is not excepted under subsection (1) of this section, of specific instances of the victim's or a witness's prior or subsequent sexual conduct ... is to be offered at trial ...:
>
> (a) A written motion shall be made ... prior to trial unless later for good cause shown ... stating that the moving party has an *offer of proof of the relevancy and materiality of [the] evidence ....*

§ 18–3–407(2) (emphasis added).

Although our rules of evidence generally favor the admission of evidence, we have previously held that the rape shield creates a presumption that evidence relating to a rape victim's sexual conduct is irrelevant to the proceedings. *People In Interest of K.N.,* 977 P.2d 868, 872 (Colo.1999); *People v. Murphy,* 919 P.2d 191, 195 (Colo.1996). In *Interest of K.N.,* we found that "the rape shield statute begins with the unmistakable statement that evidence of a victim's sexual history 'shall be presumed to be irrelevant.' As a consequence, then, the force of the statute generally makes a victim's sexual history inadmissible." 977 P.2d at 872.

Although the rape shield statute creates a presumption of irrelevance for evidence of a rape victim's sexual conduct, this general

prohibition on the admission of such evidence is qualified by three statutory exceptions. § 18–3–407; *Interest of K.N.*, 977 P.2d at 872 ("[E]vidence [of a rape victim's sexual conduct] is admissible only through three exceptions explicitly set forth in the rape shield statute."). Thus, evidence is only admissible under the rape shield statute if: (1) it is evidence of a victim's prior sexual contact with the accused pursuant to subsection 407(1)(a); (2) if it is evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence pursuant to subsection 407(1)(b); or (3) if the defendant makes an offer of proof showing that the evidence is relevant to a material issue in the case pursuant to subsection 407(2). § 18–3–407. Because it is undisputed that the first two statutory exceptions under subsection 407(1) are inapposite to the facts of the instant case, we do not address them. Thus, subsection 407(2) provides the only possible basis for admission of Defendant's proffered evidence.

Under subsection 407(2), evidence of a rape victim's sexual conduct may only be admitted if a defendant makes an offer of proof in the manner prescribed by the statute, and such offer is sufficient to show that the evidence is "relevant to a material issue in the case." § 18–3–407; *Interest of K.N.*, 977 P.2d at 871–73; *People v. McKenna*, 196 Colo. 367, 374, 585 P.2d 275, 280–81 (1978).

■ In determining whether an offer of proof sufficiently demonstrates the relevance of the proffered evidence, a trial court must apply CRE 403 to balance the probative value of the evidence against any possible unfair prejudice.[3] It is with these principles in mind that we address the issue of whether the trial court in this case erred in excluding evidence of the victim's prior sexual abuse.

### 3. Evidence in this Case

The evidence Defendant sought to admit in this case was part of a statement he made to a law enforcement investigator. It describes an incident in which the victim's mother came home on her lunch break and found the victim with the Defendant alone in his bedroom (the "lunchtime incident"). The trial court permitted the investigator to testify about most of Defendant's statement, however, the trial court excluded the portion of his statement referencing the victim's prior sexual abuse.

Specifically, the investigator was allowed to testify that Defendant told him that during the incident in question he "hurried out of the bedroom" and began talking "gibberish" to the mother because he realized "how it must look." The investigator also testified that Defendant said he "tried to distract her before [he] got in trouble." The trial court, however, did not permit the investigator to testify that later in the interview, Defendant said he acted oddly during the lunchtime incident because "there's a big deal in the house because [the victim] had had problems with the baby sitter when she was three years old." Defendant was referring to the daycare incident.

■ In determining whether the trial court properly excluded this evidence under CRE 401 and CRE 403, we will not overturn its ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Murphy*, 919 P.2d at 197 (holding that findings on the sufficiency of an offer of proof "are within the province of the trial court"). Based on our review of the record, we find that the trial court's ruling was not manifestly arbitrary, unreasonable, or unfair because the possibility of prejudice arising from the proffered

---

**3.** We note that the determination as to the admissibility of any relevant evidence, whether relevant under the rape shield statute or otherwise, necessarily involves an examination under CRE 403. *See United States v. Ramone*, 218 F.3d 1229, 1237–38 (10th Cir.2000) (holding that relevant evidence of victim's prior sexual conduct may be excluded under Federal Rule of Evidence 403); *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir.1997) (holding that in making a deter- mination of admissibility under Colorado's rape shield statute, a trial court should consider the traditional concerns of prejudice, issue and jury confusion that normally guide a trial court's evidentiary rulings); *People v. Gholston*, 26 P.3d 1 (Colo.App.2000) (upholding a trial court's finding that the probative value of evidence of a victim's prior sexual assault on his sibling was substantially outweighed by its prejudicial effect).

evidence substantially outweighs the probative value of that evidence. Therefore, the evidence was properly excluded.

According to Defendant, the admitted portion of his statement created an inference that he acted strangely because he had a guilty conscience. Defendant argues that the excluded portion of the statement is probative in that it provides an alternative explanation for the Defendant's behavior during the lunchtime incident. Defendant thus contends that the trial court erred in excluding the evidence because its admission was required under the concept of "opening the door" and the rule of completeness. We disagree.

■ The concept of "opening the door," not codified in our rules of evidence, is a court-promulgated curative measure that is not easily defined. *See generally,* 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure,* § 5039 (1977). We have previously held that the concept represents an effort by courts to prevent one party from gaining an unfair advantage by presenting evidence that, without being placed in context, creates an incorrect or misleading impression. *Murphy,* 919 P.2d at 195 (citing *People v. Miller,* 890 P.2d 84, 98–99 (Colo.1995)). In *Murphy,* we examined the concept of "opening the door" in the context of evidence whose admissibility is governed by the rape shield statute. *Id.* at 195–98. There, the defendant sought to admit evidence of a rape victim's sexual orientation, arguing that the evidence was relevant to the issue of consent and admissible because the prosecution "opened the door" when the victim testified that he was heterosexual. *Id.* We found that a defendant may overcome the rape shield statute's presumption of irrelevance by showing that the prosecution "opened the door":

> The Rape Shield Statute does not absolutely preclude the introduction of evidence regarding a rape victim's prior sexual conduct.... [A]lthough the Rape Shield Statute bars evidence of a rape victim's ... past sexual conduct, the defense may still introduce such evidence if the prosecution

makes the evidence relevant by "opening the door" to the evidence.

*Id.* at 195. Thus, the concept of "opening the door" may provide a proper basis for asserting an offer of proof and overcoming the presumption of irrelevance created by the rape shield statute.

■ In *Murphy,* however, we ultimately held that the trial court did not err in excluding evidence of the rape victim's prior sexual conduct because: (1) the prosecution did not "open the door;" and (2) *"the defense made an insufficient offer of proof and thus did not meet the requirements of the Rape Shield Statute." Id.* at 195–99 (emphasis added). Thus, *Murphy* demonstrates that application of the "opening the door" concept is not determinative as to whether evidence is admissible under the rape shield statute. Rather, a defendant must still, pursuant to the rape shield statute, make a sufficient offer of proof showing that the evidence is relevant to a material issue in the case. *Id.* at 197.

■■ Similarly, we find that the applicability of the rule of completeness is limited in the context of evidence whose admissibility is governed by the rape shield statute. Under the rule of completeness, "if a statement made by the defendant in a criminal case is admissible in evidence as an admission or declaration, it is admissible as an entire statement, including the parts thereof which are favorable as well as the parts which are unfavorable to the party offering the same." [4] *McRae v. People,* 131 Colo. 305, 311, 281 P.2d 153, 156 (1955). Thus, the rule of completeness is similar to the concept of "opening the door," which is also based on principles of fairness and completeness. Therefore, as with the "opening the door" concept, application of the rule of completeness is subject to the considerations of relevance and prejudice required under CRE 401 and CRE 403.

Indeed, in *Callis v. People,* 692 P.2d 1045, 1050 (Colo.1984), we rejected the rule of completeness as articulated in *McRae,* reasoning that evidence sought to be admitted under the rule of completeness is subject to the

---

4. The common-law rule of completeness is codified in CRE 106. Although the common-law rule applied to all statements, CRE 106 limits the rule to only "written and recorded" statements.

same considerations of relevancy and potential prejudice as other evidence. *Id.* We held, therefore, that irrespective of the applicability of the rule of completeness, a trial court may properly exclude part of a statement if it is irrelevant or prejudicial, while allowing admission of another part of the same statement. *Id.* Thus, in light of the highly prejudicial nature of evidence relating to a rape victim's prior sexual conduct, the rule of completeness has limited applicability in this context. *See infra* pp. 776–777.

■ Therefore, we hold that neither the "opening the door" concept nor the rule of completeness establish in and of themselves the admissibility of the proffered evidence. Rather, a proponent of evidence protected by the rape shield statute must nonetheless make an offer of proof as to the relevance of the evidence. Under the rape shield statute, a defendant need not make such an offer of proof before trial, but may instead make the offer at the time the evidence is proffered if "good cause" is shown. § 18–3–407(2)(a). In either instance, however, the defendant must still demonstrate that the evidence is relevant to a material issue. *See Murphy,* 919 P.2d at 197.

■ Here, Defendant made no offer of proof either prior to trial,[5] or at the time of trial, other than to assert that the evidence was "relevant to the portion being put into

evidence, and therefore should be allowed."[6] Accordingly, we find that Defendant failed to comply with the requirements of the rape shield statute, and that his offer of proof was insufficient to demonstrate that the evidence was relevant to a material issue in the case. Furthermore, the portion of Defendant's statement referencing the daycare incident poses a high risk of prejudice to the victim.

The substantive policy concerns underlying the rape shield statute speak to the prejudicial nature of evidence of a rape victim's prior sexual conduct.[7] In prior decisions, we have addressed these policy concerns, concluding that the rape shield statute provides "rape and sexual assault victims greater protection from humiliating and embarrassing public 'fishing expeditions' into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case." *McKenna,* 196 Colo. at 371–72, 585 P.2d at 278; *accord Interest of K.N.,* 977 P.2d at 874. Similarly, we found that the rape shield statute:

reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse

---

5. Although Defendant did file a motion prior to trial requesting to admit evidence relating to the daycare incident, the motion does not propose a theory of relevance for its admission. At the rape shield hearing, moreover, Defendant's attorney failed to comment on or present any offer of proof demonstrating the relevance of evidence relating to the daycare incident.

6. Although a review of the record fails to demonstrate that Defendant had "good cause" for failing to file an offer of proof prior to trial, we need not address this issue because we conclude that Defendant failed to demonstrate the relevance of the evidence under CRE 401 and CRE 403.

7. *Richmond,* 122 F.3d at 872 (noting that legitimate state interests behind Colorado's rape shield statute such as giving rape victims heightened protection against "surprise, harassment, and unnecessary invasions of privacy" may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted); *see also, Ramone,* 218 F.3d at 1237–38

(noting that when determining whether relevant evidence of victim's prior sexual conduct should be excluded under FRE 403, "trial judges retain wide latitude ... to impose reasonable limits on [admission of evidence] based on concerns about ... harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant"); *United States v. One Feather,* 702 F.2d 736, 739 (8th Cir.1983) (holding that, "The policy of Federal Rule of Evidence 412 [the federal rape shield statute], to guard against unwarranted intrusion into the victim's private life, may be taken into account in determining the amount of unfair prejudice under Rule 403."); *Kvasnikoff v. State,* 674 P.2d 302, 305 (Alaska Ct.App.1983) (holding that admissibility of evidence under Alaska's rape shield statute requires the trial judge to balance the probative value of the evidence against the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted *invasion of the privacy of the victim* ).

in court as the price of their cooperation in prosecuting sex offenders.

*McKenna,* 196 Colo. at 372, 585 P.2d at 278.

■ In this case, admission of evidence concerning the victim's prior sexual abuse would cause the victim to suffer precisely the unnecessary invasion of privacy and emotional abuse contemplated by the rape shield statute. Accordingly, we hold that the trial court did not abuse its discretion in excluding the portion of the statement referencing the daycare incident because its prejudicial effect outweighed its probative value.

■ In summary, a trial court's determination of admissibility cannot be disturbed on appeal absent abuse of discretion. Under CRE 403, a court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence protected by the rape shield statute falls under a presumption that such evidence concerning a victim or witness' sexual conduct is irrelevant unless the proponent of the evidence makes a showing that the proffered evidence is "relevant to a material issue in the case." Moreover, in weighing the relevance of such evidence against its potentially prejudicial effect, a trial court may consider the policy concerns underlying the rape shield statute.

In the case at hand, we hold that the trial court did not abuse its discretion in determining that Defendant's offer of proof was insufficient under the rape shield statute. Defendant's arguments under the rule of completeness and the "opening the door" concept fail to create such a sufficient showing because the record demonstrates that the probative value of the proffered evidence is substantially outweighed by the risk of prejudice to the victim. Moreover, no further offer of proof as to the probative value of the proffered evidence was submitted by Defendant. Thus, we hold that the trial court properly excluded the portion of Defendant's statement concerning the daycare incident. Accordingly, we reverse the court of appeals' judgment overturning Defendant's conviction.

## B. SUFFICIENCY OF COUNT THREE OF THE INFORMATION

■ Having determined that the trial court properly excluded the evidence at issue, we now turn to the issue of whether the information sufficiently charged the crime of sexual assault on a child, as a part of a pattern of sexual abuse. Because Defendant's argument on appeal raises questions of law, we review the trial court's ruling under a de novo standard of review. *Valdez v. People,* 966 P.2d 587, 590 (Colo.1998).

Defendant argues that he could only be convicted on count three if he was first convicted on count two. He asserts that count three was insufficient to charge a crime, rather it only charged the sentence enhancer. As a result, Defendant argues, count three is only valid to the extent it incorporates the crime charged in count two. We disagree.

■ As a preliminary matter, Defendant's contention that count three incorporates count two lacks merit. In order for a count to incorporate another count we have held that it must contain a *clear reference* to the latter. *Martinez v. People,* 163 Colo. 503, 507, 431 P.2d 765, 767 (1967). Here, there is no reference to count two in count three. Thus, count three does not incorporate count two.

■ Furthermore, we find that count three sufficiently charges the crime of sexual assault on a child, as well as the sentence enhancer because a single count may charge both a crime and a sentence enhancer. *See People v. Williams,* 984 P.2d 56, 60 (Colo. 1999).

Crim. P. 7(b)(2) sets forth the requirements for determining whether an information is sufficient and thus invokes jurisdiction of the court. Crim. P. 7(b)(2) provides:

The information shall be deemed technically sufficient and correct if it can be understood therefrom:

(I.) That it is presented by the person authorized by law to prosecute the offense;

(II.) That Defendant is identified ...;

(III.) That the offense was committed within the jurisdiction of the court ...;

(IV.) *That the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction.*[8]

(Emphasis added). We have previously held: "When an information satisfies each of these requirements [of Crim. P. 7(b)(2) ], *it invokes jurisdiction of the court.*" *Williams,* 984 P.2d at 60 (emphasis added). The issue in this case is whether count three sets forth the offense charged "with such degree of certainty that the court may pronounce judgment upon a conviction." Crim. P. 7(b)(2)(IV).[9]

■ In determining whether an information is sufficient, moreover, this court has identified two fundamental objectives that an information must serve: "A charge is sufficient if it alleges sufficient facts to permit the accused to prepare an adequate defense and to assure that the defendant cannot be prosecuted again for the same crime." *People v. Chavez,* 730 P.2d 321, 325 (Colo.1986); *accord People v. Moore,* 200 Colo. 481, 484, 615 P.2d 726, 728 (1980); *People v. Albo,* 195 Colo. 102, 104, 575 P.2d 427, 429 (1978). In *Williams,* we spoke to these dual requirements and held: "Colorado has followed the modern trend of testing the sufficiency of the information based upon the fundamental objectives the information serves rather than technical pleading requirements of the common law. This functional approach mirrors the efforts of the federal criminal code and follows the lead of the Supreme Court." 984 P.2d at 60 (citations omitted).

■ This court has held, moreover, that if an information identifies the essential elements of the crime charged, then it is sufficient. *Id.; Cervantes v. People,* 715 P.2d 783, 786 (Colo.1986); *Moore,* 200 Colo. at 485, 615 P.2d at 729; *Martinez,* 163 Colo. at 507, 431 P.2d at 767. This requirement is satisfied if the language in the charge tracks the statutory language. *Williams,* 984 P.2d at 60; *People v. Hunter,* 666 P.2d 570, 573

(Colo.1983); *Gallegos v. People,* 166 Colo. 409, 413, 444 P.2d 267, 269 (1968).

The crime of sexual assault on a child is defined by the legislature as follows: "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim." § 18–3–405(1). An examination of the language of count three demonstrates that it not only alleges each of the elements of the crime of sexual assault on a child, it also tracks the language of section 18–3–405(1). Count three reads as follows:

> On and between June 1, 1992 and September 1, 1993, in the County of Jefferson State of Colorado, FRANK MELILLO did unlawfully, feloniously and knowingly, as part of a pattern of sexual abuse, subject another, namely [the victim], not his spouse, to any sexual contact, and the victim was less than fifteen (15) years of age and the defendant was at least four years older than the victim; contrary to the form of the statute in such case made and provided, Section 18–3–405(1)(2)(c), C.R.S., and against the peace and dignity of the People of the State of Colorado.

Thus, the information in this case properly identifies the elements of the crime charged. *See Williams,* 984 P.2d at 60. Furthermore, count three specifically cites section 18–3–405(1), the crime of sexual assault on a child. We conclude, therefore, that count three sufficiently charges the crime of sexual assault on a child.

■ We reach this conclusion despite the prosecution's failure to elect a specific incident of sexual contact on which to base its charge of sexual assault on a child. We have previously held that the prosecution need not elect a specific incident of sexual contact constituting the sexual assault on a child, nor is it required to specify the other instance(s) of sexual contact forming the pattern of sexual abuse "where there is a reasonable likelihood that jurors will not disagree on which acts of sexual contact the defendant commit-

---

**8.** Crim. P. 7(b)(2) is identical to section 16–5–202(1), 6 C.R.S. (2000).

**9.** Since count three clearly meets requirements I, II and III, we do not address them.

ted." *Thomas v. State*, 803 P.2d 144, 152–54 (Colo.1990). Thus, if the prosecution does not elect an incident, the trial court must instruct the jurors that "in order to find Defendant guilty ... they must unanimously agree either that the defendant committed the same individual act or acts or that he committed all of the acts described by the victim." *Id.* at 155.

■ In the instant case, the victim testified about a number of specific incidents of sexual abuse that occurred over the course of two years. Her recollection of many of these events was incomplete and she was unable to differentiate among the numerous incidents of sexual contact between her and Defendant. Thus, the trial court did not require the prosecution to specify the act of sexual contact forming the basis of the sexual assault on a child charge. The court instead issued an instruction requiring jury unanimity, pursuant to *Thomas*.[10] In addition, the record supports the jury's finding that the victim was subjected to a series of undifferentiated acts of sexual contact over a prolonged period of time. Thus, we find that count three, combined with Instruction 17, satisfies the requirements outlined in *Thomas* and sufficiently charges the crime of sexual assault on a child.

■ Similarly, we conclude that count three sufficiently charges the sentence enhancer. Under section 18–3–405(2)(c), sexual assault increases from a class 4 felony to a class 3 felony if "[t]he actor commits the offense as a part of a pattern of sexual abuse." Count three alleges: "On and between June 1, 1992 and September 1, 1993 ... [Defendant did] unlawfully, feloniously and knowingly, *as a part of a pattern sexual abuse*, subject another ... to any sexual contact ...." (Emphasis added.) Thus, the information specifically alleges that the sexu-

al assault was part of a pattern of sexual abuse. *See* § 18–3–401(2.5).

Although the charge does not allege the specific dates or times of the act(s) of sexual contact that constitute the pattern of sexual abuse, such specificity is not required under the statute. The statute provides that "[n]o specific date or time must be alleged for the pattern of sexual abuse; except that the acts constituting the pattern of sexual abuse must have been committed within ten years of the offense charged in the information or indictment." § 18–3–405(2)(c). Here, the information alleges that the pattern of sexual abuse occurred within a fifteen-month period of time commencing on June 1, 1992, and ending September 1, 1993, which clearly satisfies the ten-year period required by the statute. The charge, moreover, provides adequate notice to Defendant, as required under *Williams*, by expressly citing section 18–3–405(2)(c). *See Cervantes*, 715 P.2d at 786–87 (considering the fact that an information included a citation to the statute defining the crime being charged when examining whether an information provided adequate notice). In the instant case, it is clear that the count provided sufficient notice to Defendant that he was being charged with sexual assault on a child as a part of a pattern of sexual abuse.

In summary, we hold that the plain language of count three sufficiently charges both the crime of sexual assault on a child and the sentence enhancer. Count three clearly identifies each of the elements of the crime of sexual assault on a child, and each of the elements of the sentence enhancer. Thus, the count was pled with sufficient particularity to meet the dual requirements outlined in *Williams*, 984 P.2d at 60, and Defendant had notice that he was not only being charged with sexual assault on a child, but also that he was being charged with commit-

---

**10.** Instruction 17 provides:

The evidence in this case raises issues concerning several incidents of sexual assault. In order to find a pattern of sexual abuse, you must unanimously agree that either of the following have been proven beyond a reasonable doubt: 1. Defendant committed all of the incidents described by the evidence and included between June 1, 1992 and May 23, 1993.

2. Defendant committed two or more incidents of sexual contact with the victim ... between June 1, 1992 and May 23, 1993. The jurors must unanimously agree that the same two or more incidents have been proven beyond a reasonable doubt.

ting the crime as a part of a pattern of sexual abuse.

## III. CONCLUSION

For the foregoing reasons, we hereby reverse the court of appeals' holding that the trial court erred in excluding evidence relating to the victim's prior sexual abuse. However, we affirm the court of appeals' holding that the information sufficiently charges both the crime of sexual assault on a child under section 18–3–405(1), and the pattern of sexual abuse sentence enhancement provision under section 18–3–405(2)(c). We therefore reverse in part and affirm in part, and order that the judgment of conviction be reinstated against Defendant.

Justice BENDER dissents, and Justice MARTINEZ joins in the dissent.

Justice BENDER dissenting:

I respectfully dissent from the majority's opinion. In my view, count three fails to charge a crime and thus fails to invoke jurisdiction. Hence, I would reverse the court of appeals on this issue. This resolution would dispose of this case. However, because the majority addresses the exclusion of evidence of the victim's prior sexual conduct, I also address this issue and respectfully disagree with the majority. On this matter, I conclude that the trial court committed reversible error by allowing the introduction into evidence of the damaging portion of the defendant's statement while excluding the exculpatory, explanatory portion of this same statement. Because the trial in this case focused solely on the complainant's credibility, such an evidentiary ruling created a basic unfairness that has no place in our system of justice. Therefore, on this issue, I agree with the court of appeals and would reverse the defendant's conviction and remand for a new trial.

To be consistent with the structure of the majority opinion, I first address the trial court's exclusion of evidence in Part I of this dissent and turn to the jurisdictional issue in Part II.

### I.

#### A.

To understand why the trial court erred by excluding portions of the defendant's statement, it is necessary to review the facts of this case.

During the initial investigation of the charges of sexual abuse alleged by the complainant, the defendant, the complainant's step-father, told the investigating police officer about a "lunchtime incident."

The defendant said that about two years before this interview he had come home for lunch and lay down in his bedroom when the complainant came into the room. He stated he "was giving [the complainant a] back rub when he heard the front door open. He said he immediately left the room and met his wife ... in the hallway.... [A]s he came out he tried to distract her 'before I got in trouble.' He said he started to talk a lot of gibberish."

The investigator then asked why the defendant was trying to distract his wife and why he believed he was going to get in trouble. The defendant responded that "there's a big deal in the house because [the complainant] had had problems with a babysitter when she was about three years old" (referring to the "daycare incident"). The defendant also said "he was always being scrutinized by [his wife] and he didn't care for that."

Before trial, defense counsel filed a motion pursuant to the rape shield statute seeking the admission of three incidents of prior sexual conduct of the complainant: (1) evidence of sexual activities with Ryan Lynch, the complainant's boyfriend at the time of the alleged abuse, (2) evidence of sexual activities with an unnamed "older guy," and (3) evidence concerning an alleged prior sexual abuse of the complainant by an unnamed person other than the defendant when the complainant was three years old. *See* § 18–3–407(2)(a), 6 C.R.S. (2000).

When the defendant filed this motion, he did not file an affidavit stating an offer of proof as required by the rape shield statute.

*See* § 18-3-407(2)(b). At no time, however, did the prosecution object to this deficiency.

At the hearing on this motion, the trial court ruled admissible testimony of the complainant's sexual activities with her former boyfriend Ryan Lynch, but excluded mention of the complainant's prior sexual assault contained in the defendant's statement to the investigator because "that's not relevant."

At trial the complainant testified about the details of her sexual relationship with her former boyfriend, Ryan Lynch. Both the prosecutor and the defense counsel asked her about when her sexual relationship with Lynch began, the frequency of their sexual encounters, their use of contraceptives, and the possibility that Lynch may have fathered the child that she aborted.

The complainant also testified to particular incidents of sexual abuse perpetrated by the defendant. She testified about the lunchtime incident at length. She said she was lying in the bedroom when the defendant came home for lunch. She stated he lay down next to her on the bed, unbuttoned part of her shirt and touched her inappropriately. "Then he started to unbutton his pants and then the next thing I know he had jumped up and ran out to the garage door." When the complainant followed the defendant out of the bedroom she "saw [her] mom there and [her mom] was asking why his pants were undone. Why he was fixing his pants and she looked at me and I looked at her and I went downstairs and I hadn't buttoned my shirt up."

When asked why she failed to button up her shirt, the complainant stated she "wanted [her mother] to know without telling her." The complainant also said the defendant "shoved my mom over to the window and told her to look at some bird or squirrel, look at that squirrel or—he was just telling her to look out the window and then I just turned— my mom said, what are you doing, what's going on."

Later, when the complainant's mother questioned the complainant about the incident, the complainant denied that any sexual abuse occurred, saying, "nothing like that would ever happen."

Just as the complainant testified about the lunchtime incident, so did her mother, the defendant's ex-wife. She stated she came home for lunch one day because she "suspected something weird was going on because Frank had been going home every day for lunch and [the complainant] was home a lot and it was a summer and she liked to sleep late." At this time, she mentioned that the bedroom was "very dark." She saw the defendant hastily emerge from the bedroom to meet her in the kitchen. She said the defendant told her that the complainant was downstairs and then

> took me by the arm and kind of scotted me to the sliding window in the dining room and said, look at the squirrel up here. I want to show you this. Come here. And I thought that was real weird and he was pointing to something outside and I turned around and I looked at the bedroom and [the complainant] was coming out of the bedroom with an Angel's baseball shirt on with most of the buttons undone and no pants on.

When confronted about the situation by his wife, in particular as to why he lied when he said the complainant was downstairs when in fact she was in the bedroom, the mother testified that the defendant "shoved my arm and he was real nervous and he said, because it wouldn't look good, just didn't look good."

Immediately before the investigator testified, defense counsel requested that the trial court apply the rule of completeness to the defendant's statement and argued that either the entire statement be excluded or, in the alternative, that the defendant's explanation of why he acted this way be included. Defense counsel stated "the clear implication from the defendant's testimony is going to be that ... [the defendant] admits to having done something and then we're cutting out his explanation." Under the rule of completeness, the defense counsel argued that the defendant's statement about the daycare incident is necessary "to explain the portions already in evidence." The trial court, "disagree[ing]" with the defendant's argument, ruled to deny defense counsel's request.

Thus, the investigator testified to only a part of what the defendant told him. The

investigator said the defendant stated that he "came home and lay down and [the complainant] came into the room and he got up and was rubbing her back, [and] after a short period of time he heard the garage door open and ran out of the room and met his wife . . . in the hallway." The defendant admitted to the investigator that he "was nervous and tried to distract [his wife] . . . he said he started talking a lot of gibberish." The jury was told the defendant's explanation for his behavior at that time was that he "felt that it looked bad for him being in the same bedroom with his daughter alone and felt that he was going to get in trouble for it."

After the investigator testified to these admissions by the defendant, defense counsel again objected to the admission of some, but not all, of the defendant's statement; however, again the trial court "overrule[d]" his objection.

During closing argument the prosecution argued that "sometimes . . . the best way to hide something [is] to put it out in the open, especially when [the defendant] knew that [his wife] was suspicious of him." Further, the prosecution argued that the jury heard three views: the complainant's, the mother's, and the defendant's; which when taken together explain why the defendant acted guiltily by trying to distract the mother from evidence of an incident of sexual assault. The prosecutor stated to the jury that it heard:

> three perspectives . . . about what happened that lunch time . . . when [the defendant's wife] came home unexpectedly at lunchtime. You heard [the complainant's] perspective; you heard [the complainant's mother's] perspective, and you saw her shame and her guilt at not figuring it out. And you also heard the defendant's perspective and he knew it looked bad and he in his own words started talking gibberish to his wife to hide it.

### B.

The majority holds that the court of appeals erred by relying on the rule of completeness and the concept of "opening the door" and that the trial court did not abuse its discretion by excluding evidence of a complainant's prior sexual abuse as irrelevant. Maj. op. at 777. I would hold that the trial court committed reversible error by excluding mention of the complainant's prior sexual assault at the age of three as part of the defendant's initial statement to police under the circumstances of this case.

The majority states that "[a]lthough the rape shield statute creates a presumption of irrelevance for evidence of a rape victim's sexual conduct, this general prohibition on the admission of such evidence is qualified by three statutory exceptions." Maj. op. at 773. Rather, the plain language of the rape shield statute states that:

> (1) Evidence of specific instances of the victim's . . . prior or subsequent sexual conduct . . . shall be presumed to be irrelevant except:
>
> (a) Evidence of the victim's or witness' prior or subsequent sexual conduct with the actor;
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.
>
> (2) In any criminal prosecution . . . if evidence, that is not excepted under subsection (1) of this section, of specific instances of the victim's . . . prior or subsequent sexual conduct . . . is to be offered at trial, the following procedure shall be followed:
>
> (a) A written motion shall be made . . . to the court and to the opposing parties stating that the moving party has an offer of proof of the relevancy and materiality of evidence of specific instances of the victim's . . . prior or subsequent sexual conduct . . . that is proposed to be presented.
>
> . . . .
>
> (e) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered regarding the sexual conduct of the victim or witness is *relevant to a material issue to the case,* the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted.

§ 18–3–407 (emphasis added). Thus, section (1) of the rape shield statute "except[s]" two types of evidence from the presumption of irrelevance, that is the presumption *fails to apply* to subsection (1)(a): "evidence of the victim's or witness' prior or subsequent sexual conduct with the actor" and to subsection (1)(b): "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." *See* §§ 18–3–407(1)(a), –407(1)(b). The presumption of irrelevancy applies to other evidence of a complainant's prior sexual conduct unless it can be shown pursuant to the procedure designated in subsection (2), that the evidence is "relevant to a material issue to the case." § 18–3–407(2). Thus, the plain language of the statute requires that only this last category of evidence "qualifies" the presumption, whereas the other two categories of evidence listed above do not fall within the ambit of the presumption at all.

The majority concludes that although a proponent of evidence can rely on the rule of completeness and the concept of "opening the door" to seek the admission of evidence otherwise inadmissible under the rape shield statute, the proponent "must nonetheless make an offer of proof as to the relevance of the evidence." Maj. op. at 776. The majority surmises that "Defendant failed to comply with the requirements of the rape shield statute, and that his offer of proof [at trial] was insufficient to demonstrate that the evidence was relevant to a material issue in the case." Maj. op. at 776. The majority incorrectly considers whether the defendant complied with the requirements of the rape shield statute prior to trial in its analysis of the admissibility of evidence under the concept of "opening the door." The concept of "opening the door" is a protection against unfair surprise at trial. *See People v. Murphy*, 919 P.2d 191, 195 (Colo.1996). It is unreasonable to expect the defendant to comply with the procedural requirements of the rape shield statute in anticipation that the prosecutor would open the door to this otherwise inadmissible evidence at trial. Thus noncompliance with the procedural requirements of the rape shield statute prior to trial is an inappropriate consideration for whether evidence is admissible at trial under the concept of "opening the door."

Further, I disagree with the conclusion that the defendant failed to make a sufficient offer of proof at trial under the concept of "opening the door." As explained, before the investigator testified at trial, defense counsel argued to the trial court that the defendant's statement mentioning the daycare incident was relevant to place other portions of his statement in context. In other words, the excised part was necessary to rebut the inference drawn by the prosecution that the defendant was trying to distract the complainant's mother from discovering that he had sexually abused the complainant. Thus, the defendant did make a sufficient offer of proof concerning the relevancy of the daycare incident.

The majority asserts that, "Based on our review of the record, we find that the trial court's ruling was not manifestly arbitrary, unreasonable, or unfair because the possibility of prejudice arising from the proffered evidence substantially outweighs the probative value of that evidence." Maj. op. at 774. I disagree. The trial court never made a finding to exclude evidence of the daycare incident under CRE 403. The trial court ruled on the admissibility of this evidence three times, once at the motions hearing and twice at trial. Because the trial court neither considered nor gave CRE 403 as a reason for excluding mention of the daycare incident, it is inappropriate for an appellate court to apply a probative versus prejudice analysis from a cold, paper record when a 403 analysis was never initially conducted. Further, I note that Rule 403 only applies when the probative value of *relevant* evidence is outweighed by its prejudicial value. *See* CRE 403. The trial court excluded the explanatory portion of the defendant's statement because it was "not relevant." Since the majority affirms this ruling, a 403 balancing analysis is likewise irrelevant. *See* Maj. op at 776 ("[W]e find that Defendant['s] . . . offer of proof was insufficient to demonstrate that the evidence was relevant to a material

issue in this case. Furthermore, the portion of Defendant's statement referencing the daycare incident poses a high risk of prejudice to the victim.")

I further disagree with the majority's application of Rule 403, in particular, its conclusion that "the portion of the Defendant's statement referencing the daycare incident poses a high risk of prejudice to the victim." Maj. op. at 776. This statement misconstrues the concept of "prejudice" envisioned by our rules of evidence. Rule 403 protects against the danger of *unfair* prejudice, which does not mean prejudice resulting from the legitimate, probative force of the evidence. *People v. Gibbens,* 905 P.2d 604, 608 (Colo. 1995). Rather, unfair prejudice within the context of CRE 403 has a specialized meaning—it refers to relevant evidence that has "an undue tendency to suggest a decision on an improper basis." *People v. Dist. Court,* 785 P.2d 141, 147 (Colo.1990). The balancing analysis of CRE 403 reduces the danger of the jury making an irrational decision by giving relevant evidence on a material issue a probative value disproportionately higher than its logical relevance. *See People v. Quintana,* 882 P.2d 1366, 1374 (Colo.1994). The issue to consider when making a CRE 403 analysis, therefore, is whether "the search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence." 2 Jack B. Weinstein, *Weinstein's Federal Evidence* § 403.02[1][a], 403–6 (2d ed.2001) (citation omitted).

The majority's conclusion that the admission of the defendant's statement mentioning the daycare incident would "cause the victim to suffer precisely the unnecessary invasion of privacy and emotional abuse contemplated by the rape shield statute," Maj. op. at 777, is flawed because prejudice under CRE 403 does not concern the emotional or psychological impact of evidence on a complaining witness. Although a court should consider the purposes of the rape shield statute when ruling on the admissibility of evidence, this analysis is not appropriate under a CRE 403 prejudicial versus probative balancing test.[1] Rather, the appropriate analysis is to determine if the reference to the daycare incident could hinder the jury in its search for truth on a material issue in this case.

It is unlikely that the portion of the defendant's statement mentioning the daycare incident would mislead or confuse a jury on a material issue in this case. Rather, the sole value of the reference results from the legitimate, probative force of the statement, which is to offer a possible exculpatory explanation for the defendant's strange behavior during the lunchtime incident.[2] Thus, I conclude that reference to the daycare incident made by the defendant in his statement to the investigator would not have caused unfair prejudice to the prosecution and would not have hindered the jury in its truth-seeking role.

Even if the concept of prejudice encompassed the meaning given it by the majority, in other words, even if it included the emotional and psychological well being of the complainant, then the defendant's statement still would not have caused prejudice. Defense counsel never sought to question the complainant about the daycare incident. There was no real danger of subjecting the complainant to an embarrassing or humiliat-

1. As discussed further below, I note that admission of the defendant's statements that the complainant was abused at the age of three would have minimal emotional impact on the complainant in part because of other facts admitted about the sexual activities between the complainant and her boyfriend. Further, the defendant's purpose in seeking admission of this statement was to explain the complainant's mother's heightened sensitivity to the possibility of sexual abuse because of a perceived past incident of such conduct and not for the purpose of proving the truth of the abuse. In other words, the defendant wanted to mention the complainant's prior sexual abuse solely to rebut the inculpatory inference

that could be drawn from his strange behavior when he tried to distract his wife by talking gibberish.

2. Of course, I express no opinion on the merits of this possible exculpatory inference that could be drawn from the excised portion of the defendant's statement. The jury ultimately may not have found the defendant's explanation sufficient to cause a reasonable doubt of guilt, but if the trial court had admitted this evidence, then the defendant would at least have had the opportunity to rebut the inference of guilt argued by the prosecution from the statement.

ing fishing expedition into her history of sexual abuse. Further, to the extent that the defense counsel would have mentioned the sexual abuse suffered by the complainant when she was three, any embarrassment caused by this incident of sexual abuse would have been de minimus because it would have been overshadowed by the embarrassment she suffered from the detailed questioning by both sides, the prosecution and the defense, concerning her sexual activities with her former boyfriend.

Finally, if one somehow assumes some prejudice to the complainant, the admission of the defendant's full statements possesses much more probative value on the issue of credibility, the central issue in this case, than prejudice to the complainant.

The jury heard the testimony of both the complainant and the complainant's mother regarding the defendant's strange conduct during the lunchtime incident. The complainant told the jury that the defendant's actions and words so obviously betrayed his guilt that she believed her mother would "know without telling her" that the defendant was sexually abusing her. His wife testified that the defendant admitted to her that he knew the situation "just didn't look good."

The jury also heard the defendant's statements admitting that he "felt that it looked bad for him being in the same bedroom with his daughter alone and felt that he was going to get in trouble for it." In closing, the prosecution drew the same inference from the defendant's statement: "[He] knew it looked bad and he in his own words started talking gibberish to his wife to hide it." From this partial statement the prosecutor argued to the jury that the defendant's own statements and conduct constituted an admission of guilt.

Exclusion of the complete statement of the defendant mentioning the daycare incident, which the defendant made spontaneously to the investigator, prohibited the defense from arguing an exculpatory inference contrary to the inference of guilt argued by the prosecutor. The defense identified this problem to the trial court that "the clear implication from the defendant's testimony [to the investigator] is going to be that ... Mr. Melillo

admits to having done something and then we're cutting out his explanation." Thus, the trial court, by permitting the jury to hear powerful evidence, which inferred guilt, without permitting the jury to hear the defendant's explanation, deprived the defendant of a full and fair opportunity to present his case.

Accordingly, I disagree with the majority's holding that "the trial court did not abuse its discretion in excluding the portion of the statement referencing the daycare incident because it prejudicial effect outweighed it probative value." Maj. op. at 777.

Lastly, I conclude that even if I was to assume that the defendant's statements were properly excluded, then the trial court should have excluded the defendant's entire statement under the rule of completeness. I note that the majority's analysis does not address this aspect of application of the rule. We stated in *Callis v. People*, 692 P.2d 1045 (Colo.1984), that in determining the admissibility of evidence under the rule of completeness, a trial court may properly exclude part of a statement which does not have independent relevancy, "unless such excision would significantly impair the meaning and evidentiary value of the admissible parts of the accused's statement." *Callis*, 692 P.2d at 1052. As argued by the defense at trial, admitting only a portion of the statement significantly impaired the meaning and evidentiary value of his statement as a whole. Thus, even if the defendant's statements mentioning the daycare incident were properly excluded, in fairness to the defendant, the trial court should have excluded the defendant's entire statement.

### C.

The erroneous exclusion of evidence results in reversal if the exclusion affects a substantial right of the party, which is when "it can be said with fair assurance that the error influenced the outcome of the case or impaired the basic fairness of the trial itself." *Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 811–812 (Colo.1993). In a criminal case, the defendant is entitled to all reasonable opportunities to present evidence tend-

ing to create doubt as to his guilt. *People v. Bueno,* 626 P.2d 1167, 1169 (Colo.App.1981).

To determine if the trial court's exclusion of evidence of the daycare incident is reversible, it is necessary to review whether this error impacted the defendant's conviction for the charge contained in count three: the crime of sexual assault on a child as a pattern of sexual abuse. To find the defendant guilty of this charge, the jury had to either unanimously agree that between June 1, 1992 and May 23, 1993, the defendant committed all of the incidents described by the evidence or unanimously agree that the defendant committed the same two or more incidents of sexual contact in that time period.

I agree with the court of appeals' conclusion that the jury did not decide that the defendant had committed all of the incidents alleged to have occurred between June 1, 1992 and May 23, 1993 described by the evidence because the defendant was not convicted of the charges contained in count two. *People v. Melillo,* 976 P.2d 353, 359 (Colo. App.1998). From this fact, we can logically conclude that the People failed to prove at least one incident alleged to have occurred in the applicable time period. Hence, the defendant's conviction of the charge contained in count three must have been based on the jury's unanimous agreement of the occurrence of two or more other incidents of sexual abuse.

Apart from the incident alleged in count two, the testimony given at trial alleged at least six other incidents of sexual abuse during the applicable time period, in varying degrees of detail.[3] Two of the other six alleged incidents of sexual abuse were identified for the first time at trial. The complainant testified that she "just remembered" that she was sexually abused by the defendant in a hot tub and while dirt bike riding at Rampart Range. In contrast to these two incidents, the lunchtime incident was described in detail by three different witnesses: by the complainant, by the complainant's mother, and by the defendant through his statements to the investigator. The lunchtime incident was also mentioned several times in the prosecutor's closing argument, once during the initial closing and then twice in rebuttal. Thus, because the lunchtime incident was an alleged incident of sexual abuse that received a substantial amount of attention in testimony and by the prosecutor in summation, I reason that it is likely that this incident played a major role in the jury's finding of guilt on count three of the information. Hence, I agree with the court of appeals' conclusion in *Melillo* that

> this incident could well have formed a part of the evidentiary foundation for the guilty verdict under count three. At the very least, we cannot conclude with any degree of confidence that it was not one of the incidents upon which the jurors relied for this purpose.

976 P.2d at 359.

Because the defendant was not allowed to present evidence in defense of an allegation that may have led to his conviction, and because I believe from a reading of the record that the error impaired the basic fairness of the trial, I conclude that the trial court committed reversible error by excluding evidence of the daycare incident from the investigator's testimony.

## II.

As to the jurisdictional issue, whether count three charges a crime, I believe that it does not.

The information charges the defendant with three separate crimes. Count one charges the defendant with the crime of sexual assault on a child by one in a position of trust, section 18–3–405.3, 6 C.R.S. (1997). Count two charges him with the same crime of sexual assault on a child by one in a position of trust, but alleges that he committed this crime within a different time frame than in count one. The majority holds that count three "sufficiently charges both the crime of sexual assault on a child and the

---

**3.** The victim testified that she was sexually abused (1) while in a hot tub, (2) while dirt bike riding at Thunder Valley, (3) while dirt bike riding at Rampart Range, (4) almost every day before school, (5) while her mother was in the hospital after her sister Madison was born, and (6) during the lunchtime incident.

sentence enhancer" that raises the penalty for the crime of sexual assault on a child from a class four felony to a class three felony when that crime is committed as part of a pattern of sexual abuse.[4] Maj. op. at 779. I respectfully disagree.

I do so because count three attempts to charge the defendant with the class three felony crime of sexual assault on a child as part of a pattern of abuse, because the jury was instructed that count three charged this crime and was given a verdict form for this crime, and because no such crime exists under our law.

The prosecution in this case neither charged the defendant with the class four felony of sexual assault on a child nor alleged that the penalty for this crime should be enhanced because the defendant committed this crime as part of a pattern of sexual abuse. Instead, the prosecution charged as a class three felony, the "crime" of sexual assault on a child as part of a pattern of abuse. Because a count in an information that fails to charge a crime is jurisdictionally defective, I must dissent from the majority's holding reinstating the defendant's conviction.

Courts have no jurisdiction over an information or a count in an information that fails to charge a crime; this lack of jurisdiction renders void both the jury's verdict of guilty and the trial court's sentence pursuant to that verdict. See Martinez v. People, 163 Colo. 503, 505–08, 431 P.2d 765, 766–767 (1967), overruled on other grounds by People v. Williams, 984 P.2d 56, 63 n. 9 (Colo.1999); see also Crim. P. 34 (requiring the court to arrest judgment if the information does not charge a crime). "Only the General Assembly may declare an act to be a crime." People v. Boyd, 642 P.2d 1, 3 (Colo.1982); accord § 18–1–104(3), 6 C.R.S. (2000) ("no conduct shall constitute an offense unless it is described as an offense in this code or in another statute of this state"); § 18–1–104(1) ("[t]he terms 'offense' and 'crime' are synonymous").

A sentence enhancer is not a crime. Instead, a sentence enhancer is a statutory provision that increases the penalty for a crime when that crime is committed under certain circumstances. Because a person can only be convicted of a crime, and because a sentence enhancer is not a crime, a person cannot be convicted of a sentence enhancer. See People v. Tafoya, 985 P.2d 26, 31 (Colo. App.1999) (vacating defendant's conviction and sentence for possession of twenty-eight grams or more of cocaine because that charge is not an offense but merely a mandatory sentencing provision); People v. Salcedo, 985 P.2d 7, 13–14 (Colo.App.1998) (same), rev'd on other grounds, 999 P.2d 833 (Colo. 2000).

Sexual assault on a child, section 18–3–405(1), 6 C.R.S. (2000), is a crime, punishable as a class four felony. § 18–3–405(2), 6 C.R.S. (2000).

A pattern of sexual abuse, section 18–3–405(2)(c), 8B C.R.S. (1986 & Supp.1994), is not a crime, but rather is a sentence enhancer. See People v. Longoria, 862 P.2d 266, 269 (Colo.1993). It raises the penalty for committing the crime of sexual assault on a child when "[t]he actor commits the offense as part of a pattern of sexual abuse ... as defined in section 18–3–401(2.5)." § 18–3–405(2)(c). Section 18–3–401(2.5) defines a "pattern of sexual abuse" as "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim." 18–3–401, 6 C.R.S. (2000). The sentence enhancer does not require the prosecution to allege a specific date or time for the pattern. § 18–3–405(2)(c). It does, however, require the prosecution to allege that the acts constituting the pattern occurred "within ten years of the offense charged in the information or indictment" and, furthermore, requires that "[t]he offense charged in the information or indictment ... constitute one of the incidents of sexual contact involving a child necessary to form a pattern of sexual abuse as defined in section 18–3–401(2.5)." § 18–3–405(2)(c).

4. Felonies in Colorado are currently divided into six categories. § 18–1–104(2), 6 C.R.S. (2000). The current presumptive range of punishment for a class four felony is two to six years impris-

onment plus three years mandatory parole, while that for a class three felony is four to twelve years imprisonment plus five years mandatory parole. § 18–1–105(1)(a)(V)(A), 6 C.R.S. (2000).

Thus, by its plain language the sentence enhancer requires the prosecution to allege in the information or indictment that the defendant committed the crime of sexual assault on a child under section 18–3–405(1), and then allege that, within ten years of the offense of sexual assault on a child charged in the information or indictment, the defendant committed at least one other act of sexual contact involving the same child. *Longoria*, 862 P.2d at 272; *People v. Hansen*, 920 P.2d 831, 834 (Colo.App.1995). If the prosecution charges and proves these facts, then the defendant's punishment for conviction of the crime of sexual assault on a child is increased from felony four to felony three. The defendant in such a case is not "convicted" of both sexual assault on a child and the pattern enhancer. Instead, he remains convicted of only one crime, sexual assault on a child, albeit a crime punished more severely because of the proof of the sentence enhancer.

Count three reads as follows:

On and between June 1, 1992 and May 23, 1993, in the County of Jefferson, State of Colorado, FRANK MELILLO did unlawfully, feloniously and knowingly, as part of a pattern of sexual abuse, subject another, namely [the victim], not his spouse, to any sexual contact, and the victim was less than fifteen (15) years of age and the defendant was at least four years older than the victim; contrary to the form of the statute in such case made and provided, Section 18–3–405(1)(2)(c), C.R.S., and against the peace and dignity of the People of the State of Colorado. (F3)

This count alleges that, as part of a pattern of sexual abuse, the defendant committed a (second) act of sexual contact (in this case sexual assault on a child), cites the pattern of abuse statute, and, by the "(F3)" notation, asserts that this "crime" is a class three felony. Count three does not, however, refer to any other count in the information charging the class four felony of sexual assault on a child. It could not—none of the other counts in the information charged that specific class four felony.

The People concede that none of the other counts in the information charge the class four felony of sexual assault on a child, section 18–3–405(1). Nevertheless, the People argue that count three not only adequately charges the act of sexual contact forming the pattern of sexual abuse, but at the same time charges the underlying predicate class four felony of sexual assault on a child. The defendant, on the other hand, argues that the predicate crime must be charged separately from the act forming the pattern, and that count three is defective on this basis. I disagree with the defendant's contention that the predicate crime must be charged in a separate count. While it may be the better practice to allege the crime and the sentence enhancer separately, separate counts are not required. A carefully crafted count could perhaps be jurisdictionally valid. I also, however, disagree with the prosecution's assertion that count three is such a count.

To charge the crime of sexual assault on a child and the pattern enhancer in the same count, the People must allege every element of the predicate crime of sexual assault on a child and every element of the pattern sentence enhancer.

Count three fails to do this. While it arguably does charge the sentence enhancer, count three fails to charge the predicate crime of sexual assault on a child. Because count three does not allege a crime, the jury's verdict and the trial court's sentence pursuant to that verdict are both void. This court should therefore vacate the judgment of conviction on count three.

This court does not do so. Instead, the majority salvages from the language of count three all the elements necessary to construct and charge both the predicate class four felony of sexual assault on a child and the pattern sentence enhancer and then concludes that the defendant was indeed charged with, and convicted of, both this class four felony crime and the sentence enhancer.

Such, however, is not the case. At no point in the proceedings did the defendant ever have notice that, distinct from the class three felony "crime" of a pattern of sexual abuse, he was being charged with the class four felony of sexual assault on a child. The

jury was not instructed on that crime, nor was it asked, if it convicted the defendant of that crime, to indicate in a special finding whether it also found that the defendant committed that crime as part of a pattern of sexual abuse. Instead, the jury was given an instruction listing "[t]he elements of *the crime* of Count Three, Sexual Assault on a Child as Part of a Pattern of Abuse," and then given a general verdict form for this "crime." (Emphasis added.)

Nonetheless, the majority holds that these defects, if defects at all, are harmless because count three "was [pleaded] with sufficient particularity to meet the dual requirements outlined in *Williams,* 984 P.2d at 60, and [the] Defendant had notice that he was not only being charged with sexual assault on a child, but also that he was being charged with committing the crime as a part of a pattern of sexual abuse." Maj. op. at 779.

I believe that the majority's reliance on the discussion of notice in *Williams* is misplaced. The "dual requirements" outlined in *Williams* involve a type of notice not at issue in this case—specifically, notice to a defendant sufficient to allow him to (1) prepare an adequate defense and (2) be protected from further prosecution for the same offense. *Williams,* 984 P.2d at 60; *Cervantes v. People,* 715 P.2d 783, 785 (Colo.1986). This type of notice is only pertinent *after* an information has invoked the jurisdiction of the court by adequately charging the defendant with a crime. This type of notice is distinct from *notice to a defendant of the charges against him,* which is a prerequisite to jurisdiction. I note that "notice pleading" is a theory that relates solely to civil law and not criminal law:

> The "notice" theory of pleading relates only to civil cases. More than merely warning of prohibited conduct, or notifying the defendant that he has been accused, the charging document in a criminal case constitutes a serious assertion by the State that the allegations contained therein are all that is necessary for the State to prove at trial in order to secure a conviction.

*Gray v. State,* 404 So.2d 388, 391 (Fla.Dist. Ct.App.1981), *rev'd on other grounds,* 435 So.2d 816, 820 (Fla.1983).

An information may give a defendant sufficient notice of what crimes the People allege he has committed, thus invoking the court's jurisdiction, but nonetheless may fail to provide the defendant with notice sufficient to allow him to adequately prepare a defense and to prevent double jeopardy. A bill of particulars serves to remedy this second, non-jurisdictional type of notice:

> The purpose of a bill of particulars is to enable the defendant to properly prepare his defense in a case where the indictment [or information], *although sufficient to advise the defendant of the charges against him,* is nonetheless so indefinite in its statement of a particular charge that it does not afford the defendant a fair opportunity to procure witnesses and prepare for trial. A bill of particulars also protects the defendant from being prosecuted twice for the same offense, and may be necessary in order for the defendant to have sufficient information to provide a notice of alibi defense.

*Woertman v. People,* 804 P.2d 188, 190 (Colo. 1991) (citations and quotation marks omitted and emphasis added).

Because the language in *Williams* relied upon by the majority concerns this second, bill of particulars type of notice, rather than the jurisdictional prerequisite of notice to a defendant of what charges are being brought against him, the majority's *Williams* analysis has no bearing on the issue in this case. Thus, I disagree with the majority's conclusion that count three is sufficient because it meets the notice requirements of *Williams.*

For similar reasons, the majority errs when it asserts that "Crim. P. 7(b)(2) sets forth the requirements for determining whether an information is sufficient and thus invokes jurisdiction of the court" and thus that "[t]he issue in this case is whether count three sets forth the offense charged 'with such degree of certainty that the court may pronounce judgment upon a conviction.'" Maj. op. at 777–778. The issue in this case is not whether count three complies with Crim. P. 7(b)(2). So holding ignores the distinction this court affirmed in *Williams* between defects of form and defects of substance. *See*

*Williams,* section II, part A: "The Form/Substance Distinction," 984 P.2d at 59–63.

*Technical* defects in the *form* of an information do not require reversal unless the substantial rights of the defendant are prejudiced. *Williams,* 984 P.2d at 65; *People v. Albo,* 195 Colo. 102, 106, 575 P.2d 427, 429 (1978). In contrast, "[a] defect of *substance* fails to invoke the jurisdiction of the court." *Williams,* 984 P.2d at 63 (emphasis added). Crim. P. 7(b)(2) sets forth the *technical* requirements of the *form* of an information: "The information shall be deemed *technically sufficient* and correct if it can be understood therefrom ..." Crim. R. 7(b)(2) (emphasis added). Whether an information suffers from a technical defect of *form,* and whether such defect requires *reversal,* are questions that can only be reached after a court has established that it has jurisdiction over the count; that is, that the information is not *substantively* defective. Thus, the threshold question before this court is whether count three is substantively defective because it fails to charge a crime. *See People v. Moore,* 200 Colo. 481, 485, 615 P.2d 726, 729 (1980). Only after this court has determined that count three is not substantively defective for failure to charge a crime can it consider whether it is defective in form under Crim. P. 7(b)(2) and whether such defect requires reversal.

I also disagree with the majority's reliance on the particularity requirements described in *Thomas v. People,* 803 P.2d 144 (Colo. 1990). In *Thomas* we held that in "certain cases involving evidence of a continuing pattern of sexual abuse of very young children" where "the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed," the People need not designate a particular instance of abuse to prove a single act of unenhanced sexual assault on a child, section 18–3–405(1). 803 P.2d at 152–54. Whether the People need to select a particular instance of abuse is not a question of jurisdiction. Instead, it is the type of question asked in a bill of particulars in order to allow a defendant to prepare an adequate defense and avoid double jeopardy. Thus, because

the question is not whether a jurisdictionally valid count was sufficiently particular, but whether the particulars of the count sufficiently invoke jurisdiction at all, *Thomas* is inapposite.

The majority opinion effectively amends the information by reading into the charge a new crime, sexual assault on a child in violation of section 18–3–405(1), which was neither charged nor considered by nor deliberated upon by the jury in this case. No party to the trial, that is, neither the trial court, the prosecutor, the defense counsel, nor the jury, treated this third count as charging the crime as reconstructed by the majority. The third count was always considered as a separate and independent crime charging the crime of a pattern of sexual assault as a class three felony.

To resurrect a new charge years later turns the concept of notice on its head and offends fundamental principles of notice and due process. "The right of an accused to notice of the charges which have been made against him constitutes a fundamental constitutional guarantee and lies at the foundation of due process of law." *People v. Cooke,* 186 Colo. 44, 46, 525 P.2d 426, 428 (1974).

In addition, since the jury did not return a verdict of guilty of the crime of sexual assault on a child, the majority's opinion infringes upon the jury's exclusive right to make findings of guilt. "The United States and Colorado Constitutions guarantee the defendant in a criminal case both the right to have a jury decide his case and the right to have the prosecutor prove to that jury, beyond a reasonable doubt, every element of the charged offense." *Griego v. People,* 19 P.3d 1, 7 (Colo.2001). "The jury trial guarantee reflects a fundamental decision about the exercise of official power a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." *Id.* at 8 (citation and quotation marks omitted). The majority opinion effectively charges the defendant with a new crime and then directs a verdict for the prosecution on this newly crafted count. Of course, a court may never direct a verdict for the prosecution, no matter how overwhelming the evidence. *People v. Hill,* 934 P.2d

821, 827 (Colo.1997); *accord Sullivan v. Louisiana,* 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

Hence, I would not reinstate the defendant's conviction. I would vacate the judgment of conviction on count three and permit the prosecution to file a new information[5] charging the crime of sexual assault on a child in violation of section 18–3–405(1), which is enhanced because the defendant committed this predicate crime of sexual assault as part of a pattern of sexual abuse.

Although vacating count three would require the prosecution to retry the defendant which in turn would entail additional expense and be emotionally trying for the parties, I believe that "delays and … inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters." 4 William Blackstone, *Commentaries* *350 (quoted in *Neder v. United States,* 527 U.S. 1, 40, 119 S.Ct.

1827, 144 L.Ed.2d 35 (1999) (Scalia, J., dissenting)).

The requirement that an information charge a crime may strike some as unnecessarily "formal." It is, however, a fundamental requirement, the preservation of which we should and must honor. "Formal requirements are often scorned when they stand in the way of expediency. This Court, however, has an obligation to take a longer view." *Neder,* 527 U.S. at 40, 119 S.Ct. 1827.

I therefore respectfully dissent.

I am authorized to state that Justice MARTINEZ joins in this dissent.

---

**5.** The People may do so because jeopardy does not attach when an information fails to invoke a court's jurisdiction. *See People v. Garner,* 187 Colo. 294, 298, 530 P.2d 496, 499 (1975).